UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO SOSA,<br><br>               Petitioner,<br><br>    v.<br><br>BOARD OF PAROLE HEARINGS,<br><br>              Respondent. | ) Case No. CV 15-3425-FMO (KK)<br>)<br>)<br>) FINAL REPORT AND<br>) RECOMMENDATION OF UNITED<br>) STATES MAGISTRATE JUDGE<br>)<br>)<br>)<br>)<br>) |

This Final Report and Recommendation is submitted to the Honorable Fernando M. Olguin, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Antonio Sosa ("Petitioner"), a California state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254(d), challenging his continued incarceration following the denial of his parole in October 2013. Respondent has filed a Motion to Dismiss ("Motion"), contending Petitioner fails to present cognizable claims entitling him to federal

habeas relief. For the reasons set forth below, the Court recommends the Motion be granted and the Petition be denied.

## II.

## **CLAIMS FOR RELIEF**

Although not entirely clear, Petitioner appears to assert the following two claims in the instant Petition:[1]

(1) Claim One: The California Board of Parole Hearings and the California state courts' "30 year refusal" to set "uniform [Indeterminate Sentencing Law] terms commensurate on the offense and response to treatment" violates the Ex Post Facto Clause of the U.S. Constitution.

(2) Claim Two: Application of Marsy's Law (*i.e.* California Proposition 9) to Petitioner's sentence violates the Ex Post Facto Clause of the U.S. Constitution. Pet. at 5-6.[2]

///
///

---

[1] In the instant Motion, Respondent also addresses the issue of whether the California Board of Parole Hearings' denial of Petitioner's parole in October 2013 violated Petitioner's due process rights under the Fourteenth Amendment to the U.S. Constitution. Mot. at 2-3. However, Petitioner does not raise this due process claim in the Petition. In fact, in his Opposition to the Motion, Petitioner specifically states "[t]his entire case requires an ex post facto review, and not a due process review." Opp. at 2. Petitioner also states "due process" is not "the federal question which Petitioner is asking this federal court to determine." Id. at 9. Hence, the Court declines to address Respondent's arguments regarding the due process issue.

[2] The Petition consists of a form Petition For Writ of Habeas Corpus By A Person in State Custody (CV-69), with additional documents attached to the form. The Court refers to the pages of the Petition as if they were consecutively paginated.

## III.
## **PROCEDURAL HISTORY**

On February 23, 1988, Petitioner was convicted of second-degree murder, in violation of California Penal Code section 187.  Pet.'s Lodg. at 150.[3]  Petitioner was sentenced to fifteen years to life in state prison, with the possibility of parole.  Id.  Petitioner's minimum parole eligibility date was August 23, 1997.  Id.

On October 30, 2013, after conducting a hearing, the California Board of Parole Hearings ("Board") found Petitioner unsuitable for parole.  Id. at 67-135.  Pursuant to Marsy's Law, the Board deferred Petitioner's next parole hearing for three years.  Id. at 132-33.

On May 7, 2015, Petitioner filed the instant Petition and accompanying "Lodgment of Documents" relating to his claims.  (ECF Docket No. ("dkt.") 1, 4).  On July 16, 2015, Respondent filed a Motion to Dismiss the Petition, arguing the Petition's claims are meritless.  (Dkt. 10).  On August 3, 2015, Petitioner filed an Opposition to the Motion.  (Dkt. 11).  On August 20, 2015, the Court issued its original Report and Recommendation that the Motion be granted and the matter be dismissed.  (Dkt. 12).  On September 10, 2015, Petitioner filed objections to the original Report and Recommendation.  (Dkt. 14).  The Court herein issues a Final Report and Recommendation, addressing Petitioner's objections in Section IV.A.3.

## IV.
## **DISCUSSION**

**A.    Claim One Does Not Warrant Habeas Relief**

In Claim One, Petitioner appears to contend the Board and California state courts have failed to apply California's Indeterminate Sentencing Law ("ISL") to

---

[3]    The Court's references to "Pet.'s Lodg." refer to the "Lodgment of Documents" filed by Petitioner.  (ECF Docket No. 4).

his sentence for the last 30 years.  Pet. at 5-6.  As a result, Petitioner claims he has been deprived of "an actual length of incarceration that matches [his] reformation." Id.  Petitioner claims the Board and California states courts' failure to apply the ISL to his sentence violates the Ex Post Facto Clause of the U.S. Constitution, presumably because his underlying offense occurred when the ISL was still operative in California.[4]  Id.

### 1. Ex Post Facto Clause Violations

"The States are prohibited from enacting an ex post facto law." Garner v. Jones, 529 U.S. 244, 249, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000).  "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Id.  Although retroactive changes in laws governing parole of inmates may violate the Ex Post Facto Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." Id. at 250.  A retroactive procedural change violates the Ex Post Facto Clause when it "creates a significant risk of prolonging [an inmate's] incarceration." Id. at 251.  A "speculative" or "attenuated" risk is insufficient to establish a violation. California Dept. of Corr. v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995).

### 2. California's Indeterminate and Determinate Sentencing Laws

In 1977, the California Legislature repealed the ISL and replaced it with the Determinate Sentencing Law ("DSL") (codified in California Penal Code section 1170 *et seq*.).  See Connor v. Estelle, 981 F.2d 1032, 1041 (9th Cir. 1992).  Under

---

[4]     Based upon the record before the Court, the actual date of the underlying offense is unclear.  However, according to documents filed by Petitioner, the offense actually appears to have occurred in 1987—*after* the ISL was repealed by the California Legislature in 1977.  See Pet.'s Lodg. at 9.

4

1 the ISL, state courts were required to sentence individuals convicted of a crime to
2 state prison for the range of time prescribed by law, but were prohibited from
3 establishing the length of time within the statutory range that the individual would
4 serve.  People v. Wingo, 14 Cal.3d 169, 174, 121 Cal. Rptr. 97, 534 P.2d 1001
5 (1975).  The length of imprisonment was to be determined instead by an
6 administrative agency known as the "Adult Authority," which also issued
7 guidelines for determining whether a person was suitable for parole.  Id.; In re
8 Duarte, 143 Cal. App. 3d 943, 947, 193 Cal. Rptr. 176 (Cal. Ct. App. 1983).

9      By contrast, the DSL fixed the terms of imprisonment for most offenses.  In
10 re Stanworth, 33 Cal. 3d 176, 182, 187 Cal. Rptr. 783, 654 P.2d 1311 (1982).
11 Under the DSL, new parole regulations were also issued, but these regulations
12 largely maintained existing guidelines for parole suitability.  In re Duarte, 143 Cal.
13 App. 3d at 951.

14     **3.**    **Analysis**

15      Petitioner is not entitled to habeas relief on Claim One.  The Ninth Circuit
16 has explicitly rejected ex post facto claims challenging the failure to apply ISL
17 standards.  See Connor, 981 F.2d at 1033-34; see also Jones v. Calif. Bd. of Prison
18 Terms, 239 F. App'x 372 (9th Cir. 2007) (petitioner's constitutional challenges to
19 application of DSL standards to parole proceedings "are foreclosed by this court's
20 decision in *Connor v. Estelle*").  In Connor, the Ninth Circuit reasoned that the
21 enactment of the DSL did not alter the relevant criteria for determining parole
22 suitability under the ISL, and that, therefore, the application of DSL standards to
23 prisoners sentenced under the ISL does not violate the Ex Post Facto Clause.
24 Connor, 981 F.2d at 1033-34.  Accordingly, Connor holds habeas relief is not
25 warranted on Claim One.

26      In his Objections to the Court's original Report and Recommendation,
27 Petitioner attempts to distinguish Conner, stating "Conner was a determination on
28

its face, and not on how the Board actually applied those relevant criteria for determining parole suitability." Objections at 6. In other words, Petitioner argues that even if the DSL did not facially alter parole suitability guidelines in place under the ISL, the Board here did not properly apply such guidelines when determining Petitioner's parole eligibility. Id. at 6-7. Specifically, Petitioner claims the Board "continue[d] to ignore [Petitioner's] successful responses to treatment, and denied parole based on confidential information that has nothing to do with reformation." Id. at 5. As a result, Petitioner concludes the Board denied him an "opportunity at an actual length of incarceration that matches his reformation and not the crime" - an opportunity Petitioner claims he was entitled to under the ISL. Id. at 5-6.

Petitioner's argument is meritless. Petitioner has lodged a transcript of his 2013 parole hearing before the Board. Pet.'s Lodged Documents at 67-135. The transcript flatly contradicts Petitioner's claim that the Board did not take into account Petitioner's response to treatment and his reformation. According to the transcript, the Board did consider Petitioner's "programming" and "good behavior" in its decision. Id. at 130, 133. The Board also acknowledged Petitioner had participated in an anger management program over four years prior to the hearing, but found it unclear whether Petitioner had "the skills and tools necessary to be successful out on parole." Id. at 132-33. The Board even encouraged Petitioner to continue "go[ing] through the rehabilitation process." Id. at 133. In short, the Board did not fail to consider Petitioner's response to rehabilitative treatment as Petitioner claims. Rather, the Board simply found Petitioner ineligible for parole despite such treatment.

**B.** **Claim Two Does Not Warrant Habeas Relief**

In Claim Two, Petitioner appears to contend the Board's deferral of his parole hearing for three years pursuant to California Proposition 9, also known as

"Marsy's Law," constitutes a violation of the Ex Post Facto Clause. Pet. at 5-6.

### 1. **Marsy's Law**

Marsy's Law was enacted by California voters in 2008. In re Vicks, 56 Cal. 4th 274, 278, 153 Cal. Rptr. 3d 471, 295 P.3d 863 (2013). Marsy's Law amended California Penal Code section 3041.5(b)(2) to impose a minimum deferral period for subsequent parole suitability hearings of three years, and to authorize the Board's deferral of a subsequent parole hearing for up to five, seven, ten, or fifteen years. Cal. Pen. Code § 3041.5(b)(3) (2010). Prior to the enactment of Marsy's Law, when the Board denied parole, it deferred subsequent parole suitability hearings with respect to indeterminately-sentenced inmates for one year unless the Board determined it was unreasonable to expect that parole could be granted the following year. See id. § 3041.5(b)(2) (2008). If that determination was made, the Board could then defer the inmate's subsequent parole suitability hearing for up to five years. Id.

### 2. **Ex Post Facto Clause Violations**

See Section IV.A.1. for a description of the legal standard for assessing ex post facto violation claims.

### 3. **Gilman Class Action**[5]

On April 7, 2005, in Gilman v. Fisher, et al., No. CV S-05-00830-LKK (CKD) (E.D. Cal.), a California state prisoner serving a life term with the possibility of parole filed a lawsuit in the U.S. District Court for the Eastern District of California ("Gilman court") challenging California parole hearing

---

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the docket and records in Gilman v. Fisher, et al., No. CV S-05-830-LKK (GGH). See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

procedures, pursuant to 42 U.S.C. § 1983. <u>Gilman</u>, Dkt. 1. On April 25, 2011, the <u>Gilman</u> court permitted the lawsuit to proceed as a class action lawsuit challenging, *inter alia*, the constitutionality of the parole deferral provisions in Marsy's Law under the Ex Post Facto Clause. <u>Gilman</u>, Dkt. 340. Pursuant to Federal Rule of Civil Procedure 23(b)(2),[6] the <u>Gilman</u> court certified a class comprised of "all California state prisoners who have been sentenced to a life term with the possibility of parole for an offense that occurred before November 4, 2008." <u>Id.</u> at 2. According to the <u>Gilman</u> court, class members "may not maintain a separate, individual suit for equitable relief involving the same subject matter of the class action." <u>Gilman</u>, Dkt. 296, 278, 276, 274.

On February 28, 2014, the <u>Gilman</u> court found Marsy's Law violated the Ex Post Facto Clause and granted declaratory and injunctive relief to the class members. <u>Gilman</u>, Dkt. 532. On August 12, 2014, the Ninth Circuit granted a motion to stay the <u>Gilman</u> court's order. <u>Gilman v. Brown</u>, No. 14-15680 (9th Cir.), Dkt. 26. The matter is now pending on appeal before the Ninth Circuit.

**4.    Analysis**

In Claim Two, Petitioner appears to argue the Board's deferral of his next parole hearing by three years pursuant to Marsy's Law violates the Ex Post Facto Clause because his underlying offense was committed before Marsy's Law became effective in 2008. Pet. at 5-6. However, Claim Two is identical to the claim presented in the <u>Gilman</u> class action: namely whether the application of the

---

[6]    Rule 23(b)(2) provides that a class action lawsuit for injunctive relief may proceed if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

8

deferral provisions of Marsy's Law to parole applicants sentenced for pre-2008 offenses violates the Ex Post Facto Clause.

Here, Petitioner is a member of Gilman's certified class because he: (1) is a California state prisoner; (2) was sentenced to a term of fifteen years to life in prison with the possibility of parole; and (3) was sentenced for an offense which occurred before the November 8, 2008 effective date of Marsy's Law. Because Petitioner does not allege he has opted out of the Gilman class or seeks relief different and beyond that sought by the class, he is bound by the Gilman court's order prohibiting class members from bringing an individual lawsuit challenging Marsy's Law as violative of the Ex Post Facto Clause.[7] See Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979) ("A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result."); see also McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action.").

---

[7] In his Opposition to Respondent's Motion to Dismiss, Petitioner argues he is not precluded from bringing the instant action because, unlike in Gilman, he is "only asking the Court to address how application of Marsy's Law compounds the deprivation of his expectation that his actual length of incarceration will match his reformation and not his crime, an issue not being addressed by the Gilman class action." Opp. at 24. While the meaning of this statement is not entirely clear, Petitioner appears to argue Marsy's Law "compounds" the effects of the allegedly improper failure to apply the ISL to his sentence (*i.e.* the subject of Claim One). Id. However, as the Court noted when dismissing Claim One, the Ninth Circuit has held the enactment of the DSL did not alter the relevant criteria for determining parole suitability under the ISL. Connor, 981 F.2d at 1033-34. Hence, the failure to apply the ISL had no effect on Petitioner's parole suitability and, thus, there was nothing for Marsy's Law to "compound." Petitioner's attempt to distinguish this case from Gilman is therefore meritless.

9

Moreover, federal district courts have routinely dismissed similar ex post facto claims in federal habeas corpus petitions without prejudice in light of the ongoing Gilman class action. See Butler v. Swarthout, No. 2:13-CV-0662-JAM (CMK), 2015 WL 237125, at *5 (E.D. Cal. Jan. 16, 2015); Rodriguez v. Spearman, No. EDCV 14-1113 JVS (AJW), 2015 WL 136043, at *3 (C.D. Cal. Jan. 9, 2015); Sims v. Swarthout, No. CV 12-3149-JSL (DTB), 2012 WL 5381408 at *7 (C.D. Cal. July 30, 2012), report and recommendation adopted, No. CV 12-3149-JSL (DTB), 2012 WL 5381401 (C.D. Cal. Oct. 31, 2012). Hence, in light of the ongoing Gilman action, the Court dismisses Claim Two without prejudice. Accordingly, habeas relief is not warranted on Claim Two.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an order: (1) accepting the findings and recommendations in this Report; (2) directing that judgment be entered denying the Petition; and (3) dismissing the action, with prejudice as to Claim One and without prejudice as to Claim Two.

DATED: September 22, 2015

_____
HON. KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE